```
       IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                  JACKSON DIVISION
```

**MARGIE STATON**                                              **PLAINTIFF**

VS.                                      CIVIL ACTION NO. 3:05-CV-158BS

**MEDICAL PRACTICE SOLUTIONS, INC.**                           **DEFENDANT**


### OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment of Defendant Medical Practice Solutions, Inc. Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

### I.  Factual Background and Procedural History

Plaintiff Margie Staton, a white female, brings this employment discrimination suit against her former employer, Defendant Medical Practice Solutions, Inc., ("MPSI"), alleging that her employment with Defendant was terminated because of her race and age.

Prior to beginning her employment with Defendant, Plaintiff was employed by Mississippi Surgical Center ("MSC") where she conducted billing and collections for MSC.  After MSC was acquired by another company, Defendant, a medical billing company, contracted to perform billing for MSC. Because of her experience

with MSC, Defendant hired Plaintiff as a biller on or around January 1, 2004.

Vicky Larson, a white female, was Plaintiff's supervisor. For the first three months of her employment with Defendant, Plaintiff and another former MSC employee converted MSC billing to Defendant's computer system. At some point thereafter, Plaintiff was promoted to the position of team leader. However, on May 12, 2004, Plaintiff was demoted from team leader to her former position of biller. Defendant alleges that Plaintiff was demoted due to poor performance, but Plaintiff contends that she was demoted because other employees of Defendant, all of whom are black, believed Plaintiff "was after Mrs. Larson's job." Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment, p. 2.

After her demotion, Defendant alleges that Plaintiff's performance continued to be unsatisfactory. Specifically, Defendant contends that Plaintiff's work was not done correctly, that she failed to meet performance goals, and that on one occasion, she made harassing calls to MSC employees. Larson claims that she discussed these performance issues with Plaintiff in person and through email and that she also issued written warnings which Plaintiff refused to sign. <u>See</u> Exhibits "6", "8" to Exhibit "B" to Defendant's Motion for Summary Judgment. Plaintiff however denies ever receiving the written warnings. Plaintiff also contends that

the president of MPSI, Frank York, informed her that she did not have to meet the performance goals for the first three months of her employment because of the time she was spending converting the MSC information to the MPSI system.

Because Plaintiff's performance continued to be substandard, on July 27, 2004, Larson and Larson's supervisor, Amy Grissett, met with Plaintiff to inform her that her duties were being split with co-workers. Defendant also contends that Plaintiff was told that she had been placed on thirty days probation, but Plaintiff denies that she was ever informed that she was on probation.

On September 23, 2004, Larson discovered that Plaintiff had not followed the correct procedure in filing a "key document." Larson recounts that she confronted Plaintiff about the problem and that Plaintiff told her that she had always performed the procedure that way and that she would continue performing it that way despite contrary company policies. Exhibit "A" to Defendant's Motion for Summary Judgment, p. 71. Larson further contends that Plaintiff walked out of the room while Larson was discussing the matter with Plaintiff. Id. Plaintiff's employment was terminated on September 24, 2004. Defendant asserts that Plaintiff was fired as a result of her insubordination and disrespect for Larson. Although Defendant alleges that Plaintiff was replaced by Vicky Stanley, a white female, Plaintiff claims that she was replaced by Cynthia McKinney, who is black.

Aggrieved by her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 27, 2004, alleging both race and age discrimination. Plaintiff subsequently received her Notice of Right to Sue letter on November 30, 2004. Thereafter, Plaintiff filed this action on March 1, 2005, in the Circuit Court for the First Judicial District of Hinds County, Mississippi. The Complaint asserts a claim of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 (collectively referred to as "Title VII claim"), and a claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA claim").[1] Plaintiff has since conceded her ADEA claim. See Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, p. 7.

Defendant removed the case to this Court on March 8, 2005, asserting federal question jurisdiction under 29 U.S.C. § 1331, and filed the subject Motion for Summary Judgment on February 3, 2006. The Court has jurisdiction and will now consider that Motion.

**II.   Summary Judgment Standard – Employment Discrimination Case**

The Court begins by recognizing that a claim of employment discrimination can be proven through direct evidence or circumstantial evidence.  However, proving discrimination through direct evidence is difficult in most cases. Crawford v. Formosa

---

[1] The Complaint also contains a punitive damages claim.

Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000)(citation omitted). Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a standard by which to analyze discrimination claims based on circumstantial evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citation omitted); Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001).  This standard is known as the "McDonnell Douglas burden shifting analysis," or simply the "McDonnell Douglas analysis."

The first step in the McDonnell Douglas analysis is proof of a *prima facie* case of discrimination by the plaintiff.  The tests for proving a *prima facie* case vary slightly depending on the type of discrimination alleged. However, each of the groups of tests is based on minor variations of the following four factors: (1) the plaintiff must be a member of a group protected by employment discrimination law of some type; (2) the plaintiff must be qualified for the employment position in question; (3) the plaintiff must have suffered an adverse employment action, i.e., the plaintiff was not hired or promoted, or the plaintiff was fired or demoted; and (4) someone outside of the plaintiff's protected class must have filled the employment position in issue. Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)(citation omitted).  "[E]stablishment of a *prima facie* case creates a

rebuttable presumption that the employer unlawfully discriminated against the employee." <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004)(citation omitted).

If the plaintiff establishes a *prima facie* case of discrimination, then under <u>McDonnell Douglas</u> the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the employment decision in issue. <u>Patrick</u>, 394 F.3d at 315 (citation omitted). This is a burden of <u>*production*</u> as opposed to a burden of <u>*persuasion*</u>, and no credibility assessment can be made at this phase. <u>Reeves</u>, 530 U.S. at 142 (citation omitted). "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." <u>Patrick</u>, 394 F.3d at 315 (citation omitted). However, "an employer must articulate a nondiscriminatory reason <u>*with 'sufficient clarity*</u>' to afford the employee a realistic opportunity to show that the reason is pretextual." <u>Id.</u> at 317 (emphasis in original)(citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The employer's proffered reason for the employment decision may be subjective in nature, but it must be more than vague and conclusory opinions about the plaintiff. <u>Id.</u>

If the employer meets the burden of articulating a nondiscriminatory reason for its employment decision, then the presumption of discrimination created by plaintiff's *prima facie* case is nullified, and the inquiry becomes more fact specific.

6

Patrick, 394 F.3d at 315 (citation omitted).  At this point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a *pretext for discrimination*."  Id. (emphasis added; citation omitted).

The Crawford court provided a guideline by which to measure whether an employer's reason for the employment decision was merely a pretext for discrimination.

> A mere scintilla of evidence of pretext does not create an issue of material fact in all cases.  As stated by the Supreme Court in Reeves, a plaintiff must present "*sufficient* evidence to find that the employer's asserted justification is false."  It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.  Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action.  The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination.

Crawford, 234 F.3d at 902-03 (emphasis in original; internal citations omitted).  If the plaintiff creates a genuine issue of material fact on the pretext issue, then the case must proceed to trial.  Conversely, if plaintiff fails in this endeavor, then summary judgment must be granted in defendant's favor.

The ultimate question in any employment discrimination case is of course whether the plaintiff was a victim of intentional discrimination.  Reeves, 530 U.S. at 153.  Although the burdens of

producing evidence shift back and forth under the McDonnell Douglas analysis, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times. Id. at 143 (citation omitted).[2]

### III.  Analysis

Plaintiff contends that she has both direct and circumstantial evidence that Defendant acted with a discriminatory motive. Because the McDonnell Douglas scheme is not applicable to direct evidence of discrimination, the Court will begin by analyzing whether there is sufficient direct evidence of discrimination and then, if necessary, consider whether any circumstantial evidence exists to create a genuine issue of material fact.

**III.A. Direct Evidence**

Plaintiff urges that several comments made by her supervisor Vicky Larson are direct evidence that she was terminated because of her race. Specifically, Plaintiff offers her affidavit and

---

[2] The Court notes that an alternative method of proving discrimination with circumstantial evidence has recently developed. After the decision of the Supreme Court of the United States in Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), employment discrimination plaintiffs can now use circumstantial evidence to prove discrimination under a mixed-motive theory. See Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)(recognizing a "modified McDonnell Douglas approach" that merges the tradition McDonnell Douglas circumstantial evidence scheme with the mixed-motive analysis of Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). However, Plaintiff in the instant case does not proceed under a mixed-motive theory. Thus, the Court need only apply the traditional McDonnell Douglas approach.

affidavits of former co-workers wherein they recall Larson making the following comments:

- Larson stated to Plaintiff and other MPSI employees that "she [Larson] was just a black woman in a white woman's body." Exhibits "D" and "E" to Plaintiff's Response to Defendant's Motion for Summary Judgment.

- Larson told MPSI employees that "she [Larson] knew she was white, but that she and Cynthia McKinney were 'soul sisters.'" Exhibit "F" to Plaintiff's Response to Defendant's Motion for Summary Judgment.

- After Plaintiff's termination, Larson, indicating that she wanted to fire another white employee, stated that "she [Larson] could not fire any more white employees until Margie Staton's lawsuit was over." Exhibits "E" and "F" of Plaintiff's Response to Defendant's Motion for Summary Judgment.

In the context of discrimination, the United States Court of Appeals for the Fifth Circuit has defined direct evidence as "evidence that if believed, proves the fact of discriminatory animus *without inference* or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (emphasis added). For comments in the work place to be sufficient direct evidence of discrimination, they must not only meet this definition of direct evidence but must also satisfy the four-part test of Brown v. CSC

Logic, Inc., 82 F.3d 651 (5th Cir. 1999). Under the CSC Logic test, comments offered as direct evidence of discrimination must: "1) related to the protected class of persons of which the plaintiff is a member, 2) proximate in time to the termination, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 405 (5th Cir. 2001) (internal quotations and brackets omitted).[3]

In the case *sub judice*, the Court first finds that none of the comments relied on by Plaintiff is direct evidence of discrimination. Specifically, all three comments fail to meet the Sandstad definition of direct evidence as all three would require the fact finder to infer discrimination. Neither the comment by Larson that she was "just a black woman in a white woman's body" nor the comment that she was "soul sisters" with McKinney has a correlation to Plaintiff's termination. Moreover, these two

---

[3] This four-part CSC Logic test should only be applied where work place remarks are offered as *direct* evidence of discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 583 n.4 (5th Cir. 2003). Where remarks are offered as *circumstantial* evidence of pretext or as *additional* evidence of discrimination, the Fifth Circuit has applied a less stringent, two-part test. Id.; Sandstad, 309 at 899 (5th Cir. 2002). But see Manning v. Chevron, 332 F.3d 874, 882 (5th Cir. 2002) (applying CSC Logic four-part test to comments offered as evidence of pretext). If remarks are used as pretext evidence, they must "first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." Laxton v. Gap, Inc., 333 F.3d at 583. (citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000) and Sandstad, 309 F.3d at 899).

comments do not to satisfy the CSC Logic test.[4]  The comments are in no way related to the Plaintiff and certainly are unrelated to the disputed employment decision. Also, there is no evidence in the record as to when these comments were made.

Although Larson's remark that she "could not fire anymore white employees until Margie Staton's lawsuit was over" arguably satisfies the CSC Logic requirements, the comment does not directly indicate that Plaintiff was terminated because she was white. A jury would still have to infer from the comment that race played a role in Plaintiff's termination; therefore, that comment is also not direct evidence of discrimination. But, even if this third comment were direct evidence, the comment would nonetheless be inadmissible at trial. Remarks made subsequent to the employment decision at issue are not evidence that the employer acted with an ill motive. Moody v. U.S. Sec'y of the Army, 72 Fed. App'x 235, 239 (5th Cir. 2003). The third comment was made *after* Plaintiff was terminated; therefore, pursuant to Moody, it cannot be used as evidence of discrimination.  The Court therefore finds that none of the comments offered by Plaintiff is direct evidence of discrimination.

---

[4] In regards to the third requirement of the CSC Logic test – that the comment be made by an individual with authority over the employment decision, Defendant contends that Frank York, the president of MPSI, made the decision to terminate Plaintiff, not Larson. However, the Court finds that there is sufficient evidence to create a genuine issue of fact as to whether Larson had an influence in the decision to terminate Plaintiff.

**III.B. Circumstantial Evidence**

Because Plaintiff produces no direct evidence of discrimination, the Court must now apply a McDonnell Douglas analysis to determine whether there is sufficient circumstantial evidence of discrimination to create a genuine issue of material fact.

**III.B.1. Plaintiff's Prima Facie Case**

Defendant concedes that Plaintiff is a member of a protected class, was qualified for the position that she held, and suffered an adverse employment decision. Thus, the only contested issue regarding Plaintiff's *prima facie* case is whether she was replaced by someone outside the protected class.

In arguing that Plaintiff was not replaced by someone outside her class, Defendant asserts that Vicky Stanley, a white female, replaced Plaintiff. Further, Defendant contends that Cynthia McKinney, the black female who Plaintiff alleges replaced her, had been promoted to a supervisory position before Plaintiff was terminated and that McKinney did not assume Plaintiff's job responsibilities. However, Plaintiff produces not only her own affidavit but also the affidavit of two other former MPSI employees who allege that Plaintiff was replaced by McKinney. Exhibits "D-F" of Plaintiff's Response to Defendant's Motion for Summary Judgment. In addition, there is evidence that McKinney did assume at least some of Plaintiff's responsibilities after Plaintiff was

terminated. <u>See</u> Exhibit "B" to Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 75. There is also evidence in the record that McKinney took over Plaintiff's office space.

In light of this evidence produced by Plaintiff, the Court finds that there is sufficient cumulative evidence to create a genuine issue of material fact as to whether Plaintiff was replaced by McKinney. Therefore, the Court finds that Plaintiff has demonstrated a *prima facie* case of discrimination.

### III.B.2. Defendant's Legitimate, Nondiscriminatory Reason

Because a presumption of discrimination has been created through Plaintiff's establishment of a *prima facie* case, the burden now shifts to Defendant to provide a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff. Defendant proffers that it terminated Plaintiff because she was insubordinate and because she was disrespectful to her supervisor. As proof of its asserted reason, Defendant relies on the deposition of Vicky Larson where Larson claims that on September 23, 2004, Plaintiff refused to follow orders that Larson had given her and that Plaintiff walked out of the room in mid-conversation. Plaintiff does not refute Larson's recitation of the September 23, 2004, encounter. Therefore, the Court finds that Defendant has asserted a legitimate, nondiscriminatory explanation for firing Plaintiff.

### III.B.3. Plaintiff's Proof of Pretext

The burden of production now shifts back to Plaintiff to prove that Defendant's legitimate, nondiscriminatory reason is merely a

pretext for discrimination. As evidence of pretext, Plaintiff first relies on the workplace comments of Larson discussed *supra*. Second, Plaintiff presents affidavits of former co-workers wherein they allege that blacks were given more privileges than whites by Defendant. Third, Plaintiff rebuts Defendant's assertions that she performaned inadequately during her employment. To counter Defendant's proof that she had performance issues, Plaintiff reasons that Defendant would not have promoted her to team leader if she had not performed as expected. Also, Plaintiff denies that she ever received a written warning from Plaintiff regarding her inadequate performance and she attempts to discredit the warnings offered by Plaintiff by arguing that they do not contain her signature or a notation that she refused to sign. Plaintiff further contends that the records indicating that Plaintiff did not meet her performance goals are deceptive because they encompass not only her production but also another employee's production. Finally, Plaintiff points out that the thirty day probationary period Defendant claims she was under had expired prior to her termination.

The evidence relevant to pretext that Plaintiff relies on can be categorized as that of discriminatory remarks, disparate treatment and performance. However, to meets its burden of proving pretext, a plaintiff must "put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates."<u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added). Plaintiff offers no evidence rebutting Defendant's

14

assertion that Plaintiff was terminated because she was insubordinate and disrespectful to Larson on September 23, 2004.

The Court notes that Plaintiff does not allege that race played a role in her *demotion* from team leader on May 12, 2004. If the *demotion* had been challenged, then Plaintiff's evidence regarding her performance might very well be probative on the issue of pretext as Defendant's asserted reason for the demotion was performance. Instead, Plaintiff only contends that her *termination* on September 24, 2004, was a product of discrimination, and Defendant urges that Plaintiff was *terminated* as a result of her insubordination and disrespect. Because Plaintiff does not rebut this nondiscriminatory explanation offered by Defendant, she has failed to demonstrate that Defendant's asserted reason is a pretext for discrimination.

Accordingly, the Court finds that no genuine issues of material fact remain in this case, and therefore, Plaintiff's claims against Defendant fail as a matter of law.

## IV. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendant Medical Practice Solutions, Inc. [docket entry no. 22] is well taken and is hereby granted. This case is hereby dismissed with prejudice. A Final Judgment will be entered reflecting the final resolution of this matter.

SO ORDERED this the 13th day of April, 2006.

<u>s/ William H. Barbour, Jr.</u><br>
UNITED STATES DISTRICT JUDGE

blj